# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SILLETTE SHELLER-PAIRE as | ) | |
| Personal Representative for the Estate of | ) | |
| Dante A. Paire, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 11-1043 (RJL) |
| | ) | |
| HONORABLE VINCENT GRAY, | ) | |
| MAYOR FOR THE DISTRICT OF | ) | |
| COLUMBIA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
### (August 27, 2012) [#4]

Sillette Sheller-Paire brings this action as the personal representative of the estate

of Dante A. Paire[1] against the District of Columbia's mayor and two of the District's

departments, the Office of Attorney General ("OAG") and the District of Columbia Fire

and Emergency Medical Services Department ("Fire Department").  Plaintiff alleges

discrimination under federal and state law as well as claims for intentional infliction of

emotional distress and negligent supervision.  Before the Court is the defendants' Motion

to Dismiss the Complaint ("Defs.' Mot.") [Dkt. # 4].   Upon consideration of the parties'

pleadings and the relevant law, the Court GRANTS defendants' motion.

---

[1]      For convenience, this memorandum opinion refers to Dante Paire as "plaintiff."

## BACKGROUND

Plaintiff alleges the following facts.  Plaintiff began employment as a firefighter

and emergency medical technician ("EMT") with the Fire Department on September 6,

2005.  Compl. ¶ 3 [Dkt. # 1].  Plaintiff alleges generally that "[t]hroughout Plaintiff's

employment," he was "harassed and retaliated against due to his race and perceived

disability."  Compl. ¶ 8.  Specifically, on or about January 4, 2008, plaintiff's immediate

supervisor, Lieutenant Robert Edwards, placed him on administrative leave without

explanation.  Compl. ¶ 9.  The battalion fire chief, Kevin Beagley, confirmed his

placement on administrative leave and instructed him to contact the Fire Department's

compliance office for additional information on his duty status.  *Id.*  Plaintiff also alleges

that, unlike the other employees on his shift, he was not paid for time worked up to that

date.  *Id.*  Plaintiff sought and received psychiatric treatment from Dr. Jackson of the

Police and Fire Clinic as a consequence of these events.  *Id.* ¶ 10.  Plaintiff also sought

treatment from his own psychologist, Dr. Laverne Stanforth, from January 5, 2008 until

the plaintiff's death on February 4, 2009.  *Id.*

Plaintiff repeatedly contacted the Fire Department's compliance office and

unnamed members of the Fire Department's "upper management" from January of 2008

through July 22, 2008, but was unable to learn the reason for his placement on

administrative leave.  Compl. ¶ 11-12.  On June 11, 2008, plaintiff claims that Drs.

Jackson and Stanforth cleared him to return to limited duty, but he was not permitted to

return to work.  Compl. ¶ 13.  On July 22, 2008, the compliance office informed plaintiff

"that he had been placed on his own sick leave as opposed to administrative leave."

Compl. ¶ 14. Later that day, plaintiff spoke to "Lt. J. Washington" of the Police and Fire

Clinic and was given a limited duty position at "Fire Prevention." Compl. ¶ 14. The next

day, although plaintiff reported for work, battalion fire chief Beagley informed him that

he was being placed on sick leave again. Compl. ¶ 15. Plaintiff alleges that he submitted

written requests for the reason for his status change to Assistant Fire Chief Brian Lee on

July 29, 2008 but received no answer. Compl. ¶ 16.

On or around December 3, 2008, plaintiff filed a complaint with the Equal

Employment Opportunity Commission against the District of Columbia Department of

Fire and EMS, alleging discrimination and retaliation. Compl. ¶ 6. The Commission

dismissed that charge on March 8, 2011. Defs.' Reply, Ex. 1 [Dkt. # 9-1]. On June 6,

2011, plaintiff initiated this suit. *See generally* Compl. Plaintiff alleges violations of the

Fourteenth Amendment's Equal Protection Clause and the District of Columbia's Human

Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, through 42 U.S.C. § 1983

(Count I); intentional infliction of emotional distress (Count II); negligent supervision

(Count III); and discrimination based on race and disability in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, (Count IV). Defendants moved to dismiss the

complaint on September 29, 2011.

## STANDARD OF REVIEW

A court may dismiss a complaint or any portion of it for failure to state a claim

upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to

dismiss, however, the Court may only consider "the facts alleged in the complaint, any

documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  In evaluating a Rule 12(b)(6) motion, the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted).  However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complainant must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ANALYSIS

### I.    Plaintiff's Claims Against the Named Defendants

Defendants correctly point out that the OAG and the Fire Department are "*non sui juris*" and must be dismissed from this case. Defs.' Mot. 13-14.  Subordinate agencies within the District of Columbia's government, such as the OAG and the Fire Department, are not subject to suit without a statutory provision to that effect. *See Blackmar v. Guerre*, 342 U.S. 512, 514-15 (1952); *see also, e.g., Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 107-08 (D.D.C. 2010).  Therefore, the claims against these agencies

will be dismissed.

Further, defendants also rightly assert that Mayor Gray is not a proper party in interest because plaintiff has failed to state a claim against the Mayor in his personal capacity or in his official capacity. Plaintiff's allegations do not in any way suggest that the mayor was personally involved in the alleged misconduct. *See Cameron v. Thornburgh*, 983 F.2d 253, 257-58 (D.C. Cir. 1993). And suing a municipal official in his official capacity is the equivalent of suing the municipality itself because the official is not personally liable for damages. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). Thus, I will construe plaintiff's suit against the mayor as a suit against the District of Columbia. *See Henneghan v. Dist. of Columbia Public Schs.*, 597 F. Supp. 2d 34, 37 (D.D.C. 2009).

## II.      Plaintiff's Failure to Provide Adequate Notice Under D.C. Code § 12-309

Plaintiff's DCHRA and common law tort claims must be dismissed because plaintiff failed to satisfy the D.C. Code's notice requirements for suits against the District. D.C. Code § 12-309; Compl. ¶¶ 17-35 (Counts I (DCHRA), II (intentional infliction of emotional distress), III (negligent supervision)). Under D.C. Code § 12-309, a plaintiff seeking to sue the District must provide sufficient notice to the District's Mayor "within six months after the injury or damage was sustained." Compliance is mandatory because this statute is part of a sovereign-immunity waiver. *Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 111 (D.D.C. 2008). This notice requirement applies to nonfederal claims such as plaintiff's claim under the DCHRA, *Owens v. District of Columbia*, 993 A.2d 1085, 1089 (D.C. 2010), and plaintiff's common law tort

claims of intentional infliction of emotional distress and negligent supervision, *see Blue v. District of Columbia,* No. 10-1504, 2012 WL 746400, at *16-18 (D.D.C. March 8, 2012); *Beeton v. District of Columbia,* 779 A.2d 918, 925-26 (D.C. 2001); *Breen v. District of Columbia,* 400 A.2d 1058, 1062 (D.C. 1979).

The District contends that it has not received any notice, even though plaintiff alleges that misconduct began on January 4, 2008 and ended on July 23, 2008. Defs.' Mot. 16; Defs.' Mot. Ex. A, Craven Aff. 1-2; *see also* Compl. ¶¶ 9, 15. Indeed, neither does the complaint indicate that notice was given, *see generally* Compl., nor does plaintiff's opposition brief cite any facts to contest the District's argument, *see generally* Pl.'s Opp'n [Dkt. # 6]. Instead, plaintiff wrongly contends that the notice requirements are inapplicable here because "[a]ll actions arising out of the complaint in this matter are based upon the Defendants [sic] violations of the Plaintiff's constitutional rights under federal law." Pl.'s Opp'n 15.[2] Plaintiff is plainly mistaken—the DCHRA, intentional infliction of emotional distress, and negligent supervision claims are nonfederal claims and common law claims. Because plaintiff failed to provide the District with adequate notice for these claims, they too will be dismissed.

---

[2] Through 42 U.S.C. § 1983, plaintiff alleges violations of *both* the Fourteenth Amendment's Equal Protection Clause and the DCHRA in Count I. Compl. ¶ 18. Plaintiff's constitutional claims are addressed separately.

### III.   Plaintiff's Claims Under 42 U.S.C. § 1983[3]

Plaintiff's claim for a remedy against constitutional violations under 42 U.S.C. §

1983 must also be dismissed.[4]  To successfully plead a § 1983 claim against the District,

plaintiff must plead facts alleging a predicate violation of the Constitution or federal law

that resulted from the District's policy or custom.  *Warren v. District of Columbia*, 353

F.3d 36, 38 (D.C. Cir. 2004).  Plaintiff's complaint does not meet this standard.

---

[3]   Although the Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia,* 567 F.3d 672, 681 (D.C. Cir. 2009), the Court need not accept additional allegations inserted in a document, such as an opposition memorandum, that is not a complaint or amendment to the complaint.  *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.").  In his opposition memorandum, plaintiff has attempted to allege new facts related to specific events occurring between October 6, 2007 and December 13, 2007, and between October 3, 2008 and February 4, 2009.  *See* Pl.'s Opp'n 3-10, 12-14 (alleging facts not included in the complaint).  Therefore, in reviewing the defendants' motion to dismiss, this Court will consider only those allegations included within the complaint.

   Moreover, were plaintiff to amend the complaint to allege the misconduct referenced in the opposition brief, those claims would likely be precluded for a failure to exhaust administrative remedies under Title VII.  "Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *see also* 42 U.S.C. § 2000e-5(f)(1) (2006).  Plaintiff's EEOC charge only alleges events from January 4, 2008 through July 23, 2008.  Defs.' Reply, Ex. 2, Paire's EEOC Charge of Discrimination (alleging facts related to events between January 4, 2008 to July 23, 2008) [Dkt. # 9-2].

[4]   Plaintiff alleges constitutional violations of the Fourteenth Amendment's Equal Protection clause.  Compl. ¶ 18.  Although the Fourteenth Amendment does not apply to the District of Columbia, *see Bolling v. Sharpe*, 347 U.S. 497, 498 (1954), the equal protection clause has been found to apply to the District through the Fifth Amendment's Due Process clause.  *Brandon v. Dist. of Columbia Bd. of Parole*, 734 F.2d 56, 60 (D.C. Cir. 1984); *Dixon v. District of Columbia*, 753 F. Supp. 2d 6, 9 n.1 (D.D.C. 2010).

Assuming that plaintiff has properly alleged discrimination, plaintiff's claim must

be dismissed because plaintiff alleges no facts to support a conclusion that the

discriminatory actions were the "execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts and acts may fairly be said to represent

official policy." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).[5]

Municipalities like the District of Columbia cannot be held liable under a simple

*respondeat superior* theory. *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C.

Cir. 1997). Instead, the plaintiff must allege that a municipal policy or custom caused the

---

[5]     Even if plaintiff had successfully demonstrated that a municipal policy or custom was in place here, plaintiff has not alleged facts sufficient to plead a predicate constitutional or federal law violation. Plaintiff's discrimination claims are little more than unsupported conclusions, not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679; *see, e.g.,* Compl. ¶¶ 20-24. Although plaintiff parrots the elements of discrimination claims under § 1983, Compl. ¶¶ 19-24, plaintiff alleges few *facts* to show discrimination. These consist only of his allegations that the Fire Department neither adequately explained why he was placed on leave nor responded to his complaints, Compl. ¶¶ 9, 12, 15, 16, 21, that the Department paid other firefighters but not plaintiff for work prior to plaintiff's being placed on administrative leave, Compl. ¶ 9, and that "[plaintiff] was unaware of any white officers ever being required to use their own sick leave under the same or similar circumstances." Compl. ¶ 14. Although plaintiff describes himself as African American and mentally disabled, Compl. ¶ 1, plaintiff never expressly claims that any of the defendants' actions was motivated by a discriminatory intent or purpose. Nor does plaintiff allege any facts to support an inference that he was placed on leave or otherwise treated differently *because* of his race or disability. *See Atherton v. District of Columbia Off. of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009). To the contrary, plaintiff's own complaint provides an explanation for plaintiff's sick leave assignment—plaintiff began receiving psychiatric treatment in 2008. Compl. ¶ 10.
       Only once does plaintiff even remotely allude to a discriminatory intent when he claims that he "was unaware of any white officers ever being required to use their own sick leave under the same or similar circumstances." Compl. ¶ 14. Plaintiff does not even actually claim that white co-workers were treated differently, just that he is *unaware* of any white co-workers being treated this way. This allegation does not support a reasonable inference that the defendant acted with a discriminatory intent. In sum, plaintiff's allegations stop well short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S at 678.

constitutional violation, or, in other words, that there was an "affirmative link, such that a municipal policy was the moving force behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal quotations and citations omitted). A plaintiff may demonstrate such a municipal policy by showing any of the following: (1) the explicit setting of the policy by the government, (2) the actions of an official policymaker within the government, (3) a policymaker's adoption, through a knowing failure to act, of subordinates' actions that are so consistent as to have become a "custom," or (4) the government's failure to respond to a need in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations. *Id.* Unfortunately for the plaintiff, he has not alleged any such facts.

First, plaintiff clearly does not identify any official District policy on investigating discrimination claims or condoning discriminatory conduct. *See* Compl. ¶¶ 20-21. Second, the plaintiff has not alleged that a *final* policymaker acted or adopted the actions of subordinates. Plaintiff's complaint names several Fire Department supervisors, including the assistant fire chief, and generally references the "Department's upper management," *see* Compl. ¶¶ 9, 15, 21, but none of these officials has authority for establishing final government policy. *See Triplett v. District of Columbia*, 108 F.3d 1450, 1451 (D.C. Cir. 1997) (holding that Director of District's Department of Corrections was not final decision maker); *Coleman v. District of Columbia*, No. 09-cv-50-RCL, 2011 WL 6076329, at *3 (D.D.C. Dec. 7, 2011) (holding that Fire Chief of

FEMS was not final policy maker).[6]  Furthermore, plaintiff does not plausibly allege any actions "so consistent that they have become 'custom.'"  *Baker*, 326 F.3d at 1306. Examining the facts in the light most favorable to the plaintiff, plaintiff cites only four incidents where fire department management allegedly failed to respond to his requests to provide more information on and to investigate his being placed on leave.  Compl. ¶¶ 9, 12, 15, 16.  These incidents do not even provide equivocal evidence of constitutional violations, much less a "persistent, pervasive practice of the city officials."  *Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir. 1986).  Finally, plaintiff has not alleged sufficient facts for a claim that the District of Columbia failed to respond to a need "in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations."  *Baker*, 326 F.3d at 1306 (internal citations and quotations omitted).  Plaintiff states that defendants "were sufficiently apprised and on notice of the abuse endured by Plaintiff."  Compl. ¶ 23.  But plaintiff does not point to any indication that a final policymaker had actual knowledge or any basis for concluding that plaintiff was being discriminated against based on race or disability.  Instead, plaintiff only alleges that he requested information about his leave status.  *See, e.g., id.* ¶ 16.  In short, plaintiff alleges no facts that would show that the District was "faced with actual or constructive knowledge that its agents will probably violate constitutional rights."  *Warren*, 353 F.3d at 39.

Further, plaintiff's opposition memorandum does little to remedy these defects.

---

[6]    Again, although plaintiff has named Mayor Gray, plaintiff has not alleged any *involvement on the mayor's part* in the alleged misconduct or adoption of any policy.

Plaintiff merely recites the same allegations as in the complaint, Pl.'s Opp'n 11-12, and summarily concludes that "[a]ll of the heretofore exhibits and facts clearly establish sufficient substantiation and inference one could believe the Plaintiff was discriminated against based upon his race and disability," *id.* at 15. Therefore, plaintiff's claims under § 1983 must fail.

## IV. Title VII and ADA Claims

Plaintiff's claims under Title VII and the ADA must also be dismissed. First, plaintiff has failed to state a discrimination claim under Title VII and the ADA because plaintiff has not alleged facts that could give rise to an inference of discrimination on the basis of race or disability. *See Twombly*, 550 U.S. at 545. To establish a prima facie case for discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005); *Swanks v. Washington Metro. Area Transit Auth.*, 179 F.3d 929, 933 (D.C. Cir. 1999). Plaintiff's complaint fails to allege facts to support this third prong. As previously discussed, the plaintiff alleges no fact from which a reasonable person could infer that his status as an African-American or his alleged disability caused him to suffer an adverse employment action. *See supra* note 5; Compl. ¶¶ 7-16, 36-43. Although plaintiff makes some bare legal conclusions, *see, e.g, id.* ¶ 8, the plaintiff never alleges that the adverse employment actions, his placement on leave, were taken *because* of his race or disability. *See* Compl. ¶¶ 7-16, 36-43. Therefore, plaintiff's discrimination claims must be dismissed.

Second, plaintiff's ADA claim is deficient for an additional reason: plaintiff has

failed to allege facts to support his claim that he is disabled. A plaintiff "must adequately

allege facts sufficient to support the claim that [the plaintiff] has a 'disability' within the

meaning of the ADA, or else be subject to dismissal." *Mitchell v. Yates*, 402 F. Supp. 2d

222, 227-29 (D.D.C. 2005) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-89

(1999), *superseded by statute on other grounds,* ADA Amendments Act of 2008, Pub. L.

No. 110-325, § 3(4)(e)(i), 122 stat. 3553). Under the ADA, a person is disabled if: "(1)

he suffers from an impairment; (2) the impairment limits an activity that constitutes a

major life activity under the [ADA]; and (3) the limitation is substantial." *Haynes v.*

*Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004) (interpreting 42 U.S.C. § 1202(2)(A)

(2006)). EEOC regulations specify that an "impairment is a disability . . . if it

substantially limits the ability of an individual to perform a major life activity as

compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii) (2012);

*see also Sutton*, 527 U.S. at 492 ("If jobs utilizing an individual's skills (but perhaps not

his or her unique talents) are available, one is not precluded from a substantial class of

jobs").[7]

---

[7]     A plaintiff may also claim a disability under the ADA by alleging that the plaintiff
"has been regarded as having such an impairment" by the defendants. 42 U.S.C. §
12102(2)(C) (2006). In other words, a plaintiff may allege that the defendant mistakenly
regarded him as disabled. *Dave v. Lanier*, 681 F. Supp. 2d 68, 76 (D.D.C. 2010). In one
instance, the complaint states that the plaintiff "has been harassed and retaliated against
due to his race and perceived disability." Compl. ¶ 8. Although plaintiff does state that
he was returned to sick leave after being granted a limited duty position, Compl. ¶ 15,
neither the complaint nor the opposition brief ever make clear whether plaintiff is
alleging that he was mistakenly regarded as being disabled. Rather, plaintiff seems to
*maintain that he had a* "mental disability." Compl. ¶ 1; Pl.'s Opp'n 1. Therefore,

Although plaintiff claims a disability, he never actually identifies this disability. *See generally* Compl. Indeed, plaintiff only asserts in his complaint that he had a "mental disability" and that he sought "psychiatric treatment from Dr. Jackson of the Police and Fire Clinic as a benefit of his employment for work related stress." Compl. ¶¶ 1, 10. But plaintiff also alleges that he "was cleared by both Drs. Jackson and Stanforth to go back to work in limited duty status" and obtained a limited duty assignment from a Police and Fire Clinic lieutenant. Compl. ¶¶ 13-14. As such, plaintiff's complaint concedes that he was not restricted from a substantial class of jobs but was capable of performing as a firefighter with limited duties. Accordingly, plaintiff has failed to allege facts sufficient to support a claim that he is substantially limited in a major life activity. [8]

.

.

---

plaintiff has simply not alleged that he was mistakenly regarded as being disabled.

[8]    To the extent, plaintiff alleges a hostile work environment claim under Title VII and the ADA, that claim must also be dismissed. *See* Compl. ¶ 1. To make out such a claim, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harriv v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). But "mere reference to alleged disparate acts of discrimination cannot be transformed, without more, into a hostile work environment claim." *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005), aff'd 187 Fed. App'x 1 (D.C. Cir. 2006). Here, plaintiff's allegations that he was placed on leave without satisfactory explanation on several instances simply do not support a hostile work environment claim.

**CONCLUSION**

For all of the foregoing reasons, the Court GRANTS defendants' motion to

dismiss.  An Order consistent with this decision accompanies this Memorandum Opinion.


_____
RICHARD J. LEON
United States District Judge